UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| METEJEMEI, LLC, | Case No. 2:21-CV-249 JCM (VCF) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| MONEYTREE, INC., | |
| Defendant(s). | |

Presently before the court is defendant MoneyTree, Inc. ("Tenant")'s motion for summary judgment. (ECF No. 45). Plaintiff Metejemei, LLC ("Landlord") responded. (ECF No. 46). Defendant replied. (ECF No. 48).

Also before the court is plaintiff's countermotion for summary judgment. (ECF No. 47). Defendant responded. (ECF No. 50). Plaintiff replied. (ECF No. 51).

**I.   INTRODUCTION**

This action arises out of an alleged breach of a commercial lease agreement (the "lease"). Tenant entered into a lease agreement in July 2007 with Landlord's predecessor-in-interest for the property at 5595 Simmons Street, Suite 7, North Las Vegas, Clark County, Nevada (the "premises"). Unless otherwise noted, the following is undisputed.

Landlord initiated this action on January 13, 2021, in state court. Tenant timely removed on the basis of diversity jurisdiction. Landlord is a Nevada limited liability company, and Tenant is incorporated in the state of Washington with its principal place of business also in Washington. Landlord seeks, at a minimum, over $200,000 in unpaid rent, which exceeds the $75,000 amount-in-controversy threshold.

Tenant is a private, family-run business that offers small loans and payday loans. It is wholly owned under one corporate structure incorporated in the state of Washington and has locations in California, Colorado, Idaho, Nevada, and Washington. Because of the volatile nature

**James C. Mahan**
**U.S. District Judge**

of regulation in the consumer lending industry, it is normal practice for Tenant to negotiate early termination provisions that hinge on changes in the law.

Pursuant to the lease, Tenant was to use the premises for the operation of retail financial services. The term of the lease was ten years with two five-year options after the end of the lease. At the end of the initial lease term in 2017, Tenant opted to exercise the first five-year option, which expired on December 31, 2022. The lease included an early termination provision, which states in its entirety:

> During the Term[1] and all extensions thereof, Tenant shall have the right to terminate the Lease upon one hundred eighty (180) days written notice if, *by a change in federal, state or local law, rule, regulation or ordinance, it becomes no longer possible, or economically practical to make small loans and/or payday loans as currently allowed by such applicable laws, rules, regulations and ordinances*. If Tenant elects to exercise this termination option, Tenant shall pay Landlord an amount equal to one month of the then-current Rent[2] and the Operating Charge[3] plus the unamortized portion of the Tenant Improvement Allowance[4] and leasing commissions as an early termination fee upon tendering.

(emphasis added).

On April 27, 2020, Tenant sent a written notice of early termination pursuant to the early termination provision, giving 180 days' notice of Tenant's intent to vacate (the "written notice") as well as a check in the amount of the cancellation fee. Specifically, Tenant noted a change in (1) Colorado law that reduced the permitted annual percentage rate ("APR") to 36% and prohibited origination and maintenance fees; (2) California law that reduced the permitted APR to approximately 38.5%; and Nevada law that prohibited Tenant from issuing loans to certain consumers. On July 27, 2020, Tenant supplemented its written notice, pointing to a new rule, issued by the Consumer Financial Protection Bureau, that was a change in federal law and stood as a new and independent basis for Moneytree's early termination.

---

[1] "Term" in the lease referred to both the initial ten-year term and optional five-year terms.

[2] "Rent" is defined as the monthly rent, operating charge, tax charge, and all other amounts and charges payable by Tenant under any provision of the lease.

[3] "Operating Charge" refers to, *inter alia*, Tenant's pro rata share of Landlord's total costs for operating, managing, administering, maintaining, repairing, replacing, or improving all installations.

[4] "Tenant Improvement Allowance" refers to a flat fee allowance payable to Tenant by Landlord upon Tenant's improvement to the premises subject to certain terms and conditions.

James C. Mahan
U.S. District Judge

- 2 -

Each of these, Tenant avers, made it impossible or no longer economically practical to make small loans and/or payday loans as it did before the change in law. The written notice included a check for $11,839.89 "representing the total negotiated early termination fee of: current monthly rent equal to $10,573.59 plus current monthly operating charges equal to $1,320.30. Tenant continued to pay rent as due until it vacated the premises at the end of October 2020 pursuant to the written notice. Landlord sent a notice to default to Tenant on November 11, 2020, demanding a past due amount of $13,813.89.

Landlord filed suit against Tenant alleging breach of contract and breach of the covenant of good faith and fair dealing. Tenant attests it properly exercised the early termination provision, and thus owes no rent beyond October 31, 2020.

The only dispute between the parties is whether the conditions for early termination were met and the early termination provision was properly invoked.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

**James C. Mahan**
**U.S. District Judge**

- 3 -

element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

### III. DISCUSSION

The parties disagree on the meaning of the following language of the early termination provision: "…by a change in federal, state or local law, rule, regulation or ordinance, it becomes no longer possible, or economically practical to make small loans and/or payday loans as currently allowed by such applicable laws, rules, regulations and ordinances." There is no dispute that the provision creates two predicate conditions to trigger the provision: (1) change in law and (2) impossibility or impracticability to make small or payday loans as currently allowed. What satisfies each predicate condition, however, is disputed.

*a. Contract interpretation*

"[I]ssues of contractual construction, in the absence of ambiguity or other factual complexities, present questions of law for the courts are suitable for determination by summary judgment." *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990). "When interpreting a contract, court[s] look to the language of the agreement…to discern the intent of the contracting parties. If the contract is clear and unambiguous, then it will be enforced as written." *Washoe Cnty. School Dist. v. White*, 396 P.3d 834, 838 (Nev. 2017) (internal quotations omitted). The court finds the language of the early termination provision clear and unambiguous.

Regarding the change-in-law predicate condition, the parties contemplated every type of legal regime with no restrictions. The contract expressly provides for all levels of legislation as well as administrative regulations. Moreover, other provisions in the contract refer to "Nevada law," indicating if the parties intended geographic restrictions in the termination provision, they would have included them. Thus, the court finds that *any* change in law, without restriction, satisfies the first predicate condition.

The court likewise finds the second predicate condition unambiguous, with the key language being "*as currently allowed*." This language clearly refers to Tenant's small loan and payday loan business practices permitted by law at the time of contracting. If it becomes impossible or economically impractical to make small or payday loans as was allowed at the time of contracting, the second predicate condition is satisfied.

The parties dispute whether there is a causal element at issue. Landlord suggests that there is a causal connection between the two predicate conditions, i.e., the impossibility or impracticability must be caused by the change in law. The court and Tenant agree that the

James C. Mahan
U.S. District Judge

- 5 -

unambiguous language indicates there is.  The first predicate condition must cause the second condition: "[*B*]*y* a change in [law], *it becomes* no longer possible…"

Landlord suggests that this causal element extends such that the predicate conditions must cause economic impact to Tenant.  This contradicts the clear and unambiguous language of the early termination provision, however, and reads in economic impact as a third predicate condition.  The court may not read language into a contract.  *See Am. First. Fed. Credit Union v. Soro*, 359 P.3d 105, 108 (Nev. 2015).

*b. Tenant's exercise of the early termination provision*

Tenant submits that it properly exercised the early termination provision of the agreement by giving 180 days' notice of its intent to vacate the premises due to a change in law affecting its ability to offer small and payday loans.  It paid the termination fee and satisfied its rent obligations until the new termination date of October 31, 2020.  The court agrees.

At the time of contracting, Tenant was able to lawfully offer small and payday loans at 208% APR in Colorado and approximately 130% APR in California.  After the new laws in each state, respectively, Tenant could only charge 36% APR in Colorado and 38.5% APR in California.  Moreover, it could not charge origination and maintenance fees in Colorado as it previously had.  Nevada law, at the time of contracting, prohibited a lender from issuing loans in amounts more than 25% of a consumer's gross monthly income taking into account loans only from that lender.  The new Nevada law required taking into account loans from all lenders in the state of Nevada, reducing the consumer base available to Tenant.[5]

The changes in law—the first predicate condition—made it impossible for Tenant to offer small and payday loans as it could at the time of contracting—the second predicate condition.  Both predicate conditions were satisfied, and as the parties do not dispute, plaintiff complied with the procedural requirements of the early termination provision.

Landlord contends changes in Colorado and California do not satisfy the first predicate condition.  This argument fails for several reasons.  Tenant is a Washington corporation doing business in several states; laws that affect its ability to offer loans include laws form any state in which it operates, including Colorado and California.  Second, there are no geographic restrictions in the early termination provision as evidenced by the clear and unambiguous language of the

---

[5] Tenant's business practices were also affected by other state and federal regulations, but these are not necessary to the court's analysis.

**James C. Mahan**
**U.S. District Judge**

- 6 -

lease. Third, even if Landlord's contention is correct, changes in Nevada and federal law satisfy the first predicate condition.

Landlord further contends that the second condition is not satisfied because there was no economic impact to Tenant's overall business.[6] Even if true, as the court discusses above, this is not a predicate condition to Tenant's option to terminate the lease. All that is required is the inability to offer small and payday loans as Tenant could at the time of contracting.

Finally, Landlord argues the changes in law were simply pretext for terminating the lease, and Tenant actually decided to terminate the lease because of the location's poor performance. Whether this is true is inconsequential. Tenant reserved the right to terminate the lease if the two predicate conditions were satisfied; it was not prohibited from having other reasons to terminate the lease.

*c. Breach of implied covenant of good faith and fair dealing*

"It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 123 Nev. 217, 226 (2007). The purpose of the claim is to prevent a contracting party from "deliberately counterven[ing] the intention and spirit of the contract." *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).

Landlord suggests Tenant breached its covenant of good faith and fair dealing for exercising its rights under the early termination provision. It points to the allegation that Tenant simply used the provision as pretext to close an underperforming location. Even if the location at the premises was less successful than other locations, it is too speculative to conclude that the sole reason for terminating the lease early was underperformance. Tenant includes a similar or identical early termination provision in almost all leases it enters. The assertion that Tenant exercising its rights under the provision did not concern whatsoever the very risk that it contemplates is not persuasive.

. . .

. . .

. . .

---

[6] In support of this contention, Landlord provides evidence of Tenant's business remaining constant save for the onset of the COVID-19 pandemic.

**James C. Mahan**
**U.S. District Judge**

- 7 -

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Tenant's motion for summary judgment (ECF No. 45) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Landlord's countermotion for summary judgment (ECF No. 47) be, and the same hereby is, DENIED.

The clerk of the court is instructed to enter judgment for MoneyTree, Inc., and close this case.

DATED March 31, 2023.

_____
UNITED STATES DISTRICT JUDGE